UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA DOZIER,

               Petitioner,          **DECISION AND ORDER**
     -vs-                   **No. 08-CV-0291(MAT)**

SUPERINTENDENT ADA PEREZ,

               Respondent.
_____

## I.   Introduction

<u>Pro se</u> Petitioner Angela Dozier ("Dozier" or "Petitioner") has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of her detention in Respondent's custody. Petitioner is incarcerated pursuant to a judgment of conviction entered after a jury trial on one count of depraved indifference murder and two counts of endangering the welfare of a child.

## II.  Factual Background and Procedural History

As a foster parent, Dozier was entrusted with the care of two young boys, Terrell and Terrance Parker. At about 8 a.m. on August 6, 2003, Petitioner discovered that two-year-old Terrell had stopped breathing. Petitioner called 911.

Unable to resuscitate Terrell, the ambulance crew transported him to the hospital for further medical treatment. Dr. James Reingold found that the child had extremely low blood pressure, low heart rate, and difficulty breathing, all of which were caused by

massive internal blood loss in his abdomen. Because Terrell was not improving, Dr. Reingold sent him to the intensive care unit for emergency surgery.

Dr. Michael Caty attempted to surgically stop the blood loss in Terrell's abdomen which had been caused by a "significant crack" in the child's liver. Dr. Caty's efforts to repair the damage proved futile, and Terrell died on the operating table.

Dr. James Woytash, who performed the autopsy on Terrell, determined that the boy's liver was "pulverized" as the result of an extreme amount of blunt force to the abdomen. Dr. Woytash also found injuries to Terrell's scalp and brain which were consistent with blunt force trauma to the skull.

After Terrell died, Detective Deborah Beltz went to speak with Petitioner, who had been sedated and was sleeping in a hospital bed. Detective Beltz waited for two hours until Petitioner awoke, guarding the room and only allowing medical staff to enter.

When Petitioner finally awoke, she agreed to accompany Detective Beltz to the police station and discuss the incident. After an approximately two-hour interview, Petitioner signed a sworn statement which did not inculpate herself but mentioned her "Uncle Reggie" as having been present at the time Terrell's injuries were sustained.

After learning of the preliminary results of the autopsy, Detective Charles Aronica returned to the station and sought to

-2-

speak with Petitioner, who agreed to answer additional questions. Petitioner was informed that the preliminary results of the autopsy showed that Terrell had been murdered. Detective Aronica told Petitioner that if she was not responsible for the fatal injuries suffered by Terrell, then her Uncle Reggie must have been. Petitioner broke down into tears, admitted that it was her fault, and stated that she wanted to kill herself.

Detective Aronica immediately issued <u>Miranda</u> warnings to Dozier, who agreed to continue speaking to the police. She eventually gave another signed, sworn statement to the effect that she "inadvertently" struck Terrell in the abdomen.

Petitioner's statements to the police were held admissible at trial. The jury found that Petitioner had, "[u]nder circumstances evincing a depraved indifference to human life, and being [18] years old or more[,] . . . recklessly engage[d] in conduct which create[d] a grave risk of serious physical injury or death to another person less than [11] years old and thereby cause[d] the death of such person[,]" N.Y. PENAL LAW § 125.25(4). The jury also convicted her of the counts charging her with endangering the welfare of a child. She was sentenced to an aggregate term of 25 years to life.

Petitioner appealed to the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. <u>People v. Dozier</u>, 32 A.D.3d 1346 (4th Dept. 2006). The New York

Court of Appeals denied leave on February 27, 2008. <u>People v.</u> <u>Dozier</u>, 8 N.Y.3d 880 (2008).

On June 9, 2008, Petitioner filed a <u>pro</u> <u>se</u> motion to vacate the conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, arguing that the prosecution violated <u>Brady v.</u> <u>Maryland</u>, 373 U.S. 83 (1963), by failing to disclose documentation which allegedly substantiated her claim that she did not abuse Terrell. On September 30, 2009, the trial court denied the motion. Petitioner did not seek leave appeal.

Petitioner also filed an application for a writ of error <u>coram</u> <u>nobis</u> which was summarily denied by the Fourth Department. Petitioner did not seek leave to appeal.

This timely habeas petition followed. For the reasons that follow, the petition is dismissed.

### III. Exhaustion and Procedural Default

Respondent has raised the defense of non-exhaustion and procedural default in regards to Dozier's <u>Brady</u> claim and her contention that the prosecution tampered with a defense witness. Because these claim are patently without merit and easily denied on substantive grounds, the Court declines to resolve the procedural arguments and proceeds directly to an evaluation of the claims' merits. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Brown v. Thomas</u>, No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003) ("[I]n habeas corpus cases, potentially complex and difficult issues about the

-4-

various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.").

## IV. Analysis of the Petition's Merits

### A. The <u>Brady</u> Claim

#### 1. The Allegedly Exculpatory Documents

The documents which Dozier claims to be <u>Brady</u> material were provided to her by OCFS on April 2, 2007. In these documents, it appears that OCFS conducted three investigations of her as a foster parent concerning allegations of child abuse and maltreatment. The first report is from an August 12, 2003, investigation conducted on the fatal injuries occurring to Terrell. According to this report, the claims of abuse to Terrell were substantiated on September 22, 2003, by OCFS investigators.

The second set of documents is from an August 6, 2003, investigation conducted in regard to the same injuries to Terrell, as well as injuries suffered by his brother, Terrance. OCFS investigators substantiated these abuse allegations on September 29, 2003.

The third set of documents are from a May 21, 2003, investigation concerning injuries suffered by both Terrell and Terrance. The injuries to Terrell at that time were different from those that eventually caused his death. OCFS investigators determined that these claims of abuse were unsubstantiated on

-5-

September 18, 2003. Dozier apparently contends that the unsubstantiated claims of abuse from the May 21, 2003, investigation constitute "exculpatory" evidence allegedly withheld by the prosecution. Petitioner also appears to argue that these documents establish that she is "actually innocent" of murdering her son.

## 2. Application of the **Brady** Standard

In Brady v. Maryland, 373 U.S. 87, supra, the Supreme Court held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. E.g., Strickler v. Greene, 527 U.S. 263, 280 (1999). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued." Id. at 281-82. Failure of the petitioner to fulfill all three requirements is fatal to his or her Brady claim. See id.

"Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (holding that the government was not obligated to disclose allegedly exculpatory grand jury testimony when the defendant knew long before trial the identity of the

-6-

witnesses and that they would be testifying before the grand jury), cert. denied, 459 U.S. 1174 (1983) (citations omitted); accord, e.g., United States v. Zackson, 6 F.3d 911, 918 (2d Cir. 1993).

Here, Petitioner plainly cannot demonstrate that the prosecution "suppressed" the alleged Brady material. The heading on the cover letter from OCFS regarding the investigations indicates that the letter was addressed to Petitioner and sent to her house on October 4, 2003. Petitioner's trial did not commence until May 10, 2004. Petitioner and her trial counsel thus had seven months to acquire the accompanying documents that led to the OCFS investigators finding the May 21, 2003, accusations unsubstantiated (i.e., the allegedly exculpatory material). Petitioner cannot fault the prosecution for not disclosing information that was sent directly to her home seven months before the trial began. There was no "suppression" for Brady purposes because Petitioner knew about the material prior to her trial. See, e.g., United States v. Ruggiero, 472 F.2d 599, 604-05 (2d Cir. 1973) (finding no Brady violation where "the appellant was on notice of the essential facts required to enable him to take advantage of such exculpatory testimony as [the witnesses] might furnish" and "was also well aware of the process by which they could be compelled to testify at trial").

**B.    Actual Innocence**

Petitioner asserts that she is "actually innocent" of the charges based upon the <u>Brady</u> material discussed <u>supra</u> in Section III.A.  As the Supreme Court has explained, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief <u>absent</u> <u>an</u> <u>independent</u> <u>constitutional</u> violation occurring in the course of the underlying state criminal proceeding." (emphases supplied). <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993). Moreover, it is well-established principle of habeas review that the court is not "permit[ted] . . . to make its own subjective determination of guilt or innocence." <u>Jackson v. Virginia</u>, 443 U.S. 307, 320 n. 13 (1979) (quoted in <u>Herrera</u>, 506 U.S. at 402). Here, the <u>Brady</u> material was not "newly discovered evidence", as Dozier was aware of the results of the OCFS investigations prior to trial. Nor did an independent constitutional violation occur at Petitioner's trial; as discussed above, the <u>Brady</u> claim wholly lacks merit. Therefore, Petitioner's actual innocence claim does not state a cognizable basis for habeas relief.

**C.    Witness Tampering Claim**

Petitioner complains that the prosecution tampered with Sharon Benn ("Benn") by threatening Benn with additional jail time on her convictions if she testified. Prior to Benn being produced to testify at trial, defense counsel asserted that he had heard "third

or fourth hand" that Benn no longer wished to testify because she was frightened of "something the prosecution might inflict upon her if she insisted upon testifying." Trial Transcript ("Tr.") at 967-68. The prosecutor stated that such a claim was baseless and noted that his ability to affect Benn's sentence was negated by the fact that she had already pleaded guilty to the charges pending against her. As a result, the prosecutor asserted, the ability "to impact her in terms of a plea [was] zero." Tr. at 969-70.

The trial court instructed defense counsel to speak with Benn, determine if there had been any tampering, and "to report anything [he] need[ed] to report[.]" Tr. at 971. Trial counsel did not raise any issue of witness tampering again. Trial continued and Benn testified. She gave no indication that she had been threatened or coerced by the prosecution. Indeed, Benn confirmed that she had pleaded guilty and had been sentenced on her pending charges. Thus, Benn's own testimony undermined the initial claim by the defense that Benn had been threatened with additional jail time were she to testify for Petitioner; the prosecution could not have enhanced her sentencing exposure because she already had been sentenced by the time she testified. And, significantly, no further accusations of witness tampering were made by defense counsel.  This claim is completely controverted by the record and does not warrant habeas relief.

D.    Ineffective Assistance of Appellate Counsel

1.    The <u>Strickland</u> Standard in the Appellate Context

Petitioner claims that she was denied the effective assistance of appellate counsel because counsel omitted two arguments on appeal–that she was deprived of a fair trial when the prosecution tampered with a defense witness and that her sentence was harsh and excessive.

When a petitioner asserts that she was denied the effective assistance of appellate counsel, a federal court must review appellate counsel's performance according to the two-pronged standard established for reviewing a trial counsel's performance in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Evitts v. Lucy</u>, 469 U.S. 387 (1985). This test requires that petitioner demonstrate that counsel's performance fell below an objective standard of reasonableness, and that there is a "reasonable probability" the outcome would have been different,  but for counsel's alleged error. <u>Strickland</u>, 466 U.S. at 688-94.

Mere omission of a non-frivolous argument is insufficient to demonstrate constitutionally deficient performance. <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir.) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983)), <u>cert.</u> <u>denied</u>, 513 U.S. 820 (1994). To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that her claim

would have been successful before the state's highest court. Mayo, 13 F.3d at 534 (quotation omitted).

## 2.   Application of the Strickland Standard

### a.   Failure to Assert Witness Tampering

As discussed supra in this Decision and Order, the claim of witness tampering is belied by the record, which shows that the trial court addressed the initial claim that there was alleged witness tampering and allowed defense counsel to speak with Benn. The trial proceeded and defense counsel did not raise any further allegations of witness tampering after talking to Benn or after Benn's testimony, which contained no allusions to any improper conduct by the prosecutor. Given that the issue was not raised again by objection, exception, or argument, the claim of tampering was unpreserved as well as unsubstantiated. It was a proper exercise of professional judgment to decline to raise an unpreserved, utterly meritless claim. Moreover, there was no reasonable possibility that raising such a claim would have led to reversal of the conviction. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

### b.   Failure To Argue that Sentence Was Harsh and Excessive

Petitioner also opines that appellate counsel was ineffective for not arguing that her sentence of 25 years to life was harsh and excessive and that the Fourth Department should exercise its

discretion to reduce it in the interests of justice. Petitioner's crimes were truly heinous, and there is no reasonable probability that the Fourth Department would have disturbed the sentencing court's decision to impose the maximum punishment available under the law. See, e.g., People. Mitchell, 289 A.D.2d 776, 779-80 (App. Div. 3d Dept. 2001) (Defendant, convicted of second degree manslaughter as the result of banging infant's head against the wall, "contend[ed] that the imposed sentence was harsh, excessive and an abuse of discretion because it was the maximum sentence for her crime and because she has no previous criminal history. Where a sentence is within permissible statutory ranges, it will not be disturbed unless the sentencing court abused its discretion or extraordinary circumstances exist warranting modification. Here, given the brutal nature of the crime perpetrated on a helpless infant and the evidence presented, we find no reason to disturb the sentence imposed . . . .") (internal quotations and citations omitted).

## V.  Conclusion

For the reasons stated above, Angela Dozier's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition (Docket No. 1) is dismissed.  Because Dozier has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New

York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).

The Court also hereby certifies, pursuant to 28 U.S.C.

§ 1915(a)(3), that any appeal from this judgment would not be taken

in good faith and therefore denies leave to appeal as a poor

person.  Coppedge v. United States, 369 U.S. 438 (1962).

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

DATED:      November 4, 2011
            Rochester, New York